AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

PHLYCIA HUNT

*Defendant*

Case No. 23-mj-1033

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning on or about the date of October 22, 2021, and continuing until on or about October 26, 2022, in the County of Erie, in the Western District of New York, the defendant violated:

| Code Section | Offense Description |
|---|---|
| (Count 1) 21 U.S.C. §§ 844(a) | possession of Schedule II and Schedule IV controlled substances; and, |
| (Count 2) 21 U.S.C. § 846 | attempted possession of Schedule II and Schedule IV controlled substances. |

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet, incorporated herein by reference.

*Complainant's signature*

ANTHONY BUTERA
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

*Printed name and title*

*Judge's signature*

Signed and sworn to telephonically.
Date: March 21, 2023

City and State: Buffalo, New York

HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK )
COUNTY OF ERIE    )   SS:
CITY OF BUFFALO   )

I, **ANTHONY J. BUTERA**, being duly sworn, deposes and says:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since April of 2022. I am currently assigned to the Buffalo Field Office and to the White-Collar Crime Squad within that office. My duties include the investigation of public corruption offenses. As such, I am an investigator or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. Prior to becoming a Special Agent, I was employed as a Trooper with the New York State Police for approximately 3 years.

2. This affidavit is being submitted for a limited purpose, that is, a probable cause determination, therefore I have not presented all of the facts of this investigation to date. I have set forth only the information I believe to be necessary to establish probable cause. The facts in this affidavit come from my review of police reports, documents, my training and experience, and information obtained from other FBI agents. This affidavit is intended to

show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this manner.

3. I make this affidavit in support a criminal complaint charging **PHLYCIA HUNT** with violating Title 21, United States Code, Sections 844(a) (unlawful possession of controlled substances), and Title 21, United States Code, Section 846 (attempted possession of controlled substances).

## PROBABLE CAUSE

### Arrest on October 22, 2021

4. On October 22, 2021, at approximately 6:51 pm, T.C. and **PHLYCIA HUNT** (**HUNT**) were in a vehicle illegally parked at the corner of Ross Avenue and Tonawanda Street in Buffalo, New York.

5. A police officer from Buffalo Police Department (BPD) observed the vehicle parked and violating several New York State Vehicle and Traffic Law provisions, specifically, blocking a fire hydrant and driving with an obstructed view due to items hanging from the rear-view mirror.

6. Upon the officer's approach, the driver (T.C.) made a furtive movement towards the passenger side of the vehicle. T.C. had a revoked driver's license and had his vehicle subsequently impounded by BPD.

7.      Prior to being impounded, BPD inventoried the vehicle and seized what the BPD report described as the following items: 126 glassine envelopes[1] of gray powder that were individually packaged for sale on the passenger side floorboard; a clear plastic bag of white rock substance on the passenger's seat; a black digital scale; additional packaging material; a glass pipe with burnt crack/cocaine residue, which was located inside a purse on the passenger's seat; an additional glass pipe with burnt residue on the driver's side floorboard; two cell phones; and $863.00 of United States currency.

8.      The suspected drugs were taken to the Erie County Central Police Services Forensic Laboratory for analysis, and numerous envelopes were confirmed to contain fentanyl, cocaine, or a mixture of the two. Fentanyl and cocaine are both Schedule II controlled substances.

9.      As a result of the above arrest, T.C. and **HUNT** were both arrested and charged with various violations of New York Penal Law related to possession of controlled substances and drug paraphernalia.

10.     The arresting officer reported that neither T.C. nor **HUNT** would take responsibility for the narcotics on the day of the arrest. However, T.C. later pleaded guilty in state court to Criminal Possession of a Controlled Substance in the 4th Degree, a class D

---

[1] After the items seized were brought to the Erie County Central Police Services Laboratory for analysis, the laboratory counted the envelopes, and according to laboratory paperwork I have read and reviewed the envelopes totaled 136.

Felony, in a case prosecuted by the Erie County District Attorney's Office. **HUNT** is also charged in state court. Based upon the circumstances, and upon my conversations with other FBI agents familiar with **HUNT**, I believe she was present in the vehicle to obtain and possess a user quantity of cocaine and fentanyl, Schedule II controlled substances.

11.   On November 9, 2021, **HUNT** was interviewed by FBI agents. **HUNT** confirmed that she had been in a vehicle with T.C. who goes by the name "Tank". **HUNT** stated that she had been evicted on September 1, 2021, from an apartment she was residing in located in Amherst, New York. **HUNT** further stated that after being evicted she was desperate for shelter and asked T.C. if she could stay at his apartment off Grove Street in the city of Buffalo, and that the day of the arrest T.C. directed **HUNT** to go to the store with him. T.C. parked near a fire hydrant and BPD appeared. T.C. began throwing things from the car and told the BPD officer that the vehicle was not his and the drugs in the car did not belong to him. According to **HUNT**, the BPD Officers charged both T.C. and **HUNT** with narcotics possession because the drugs were in the vehicle with both of them.

12.   Notwithstanding the foregoing, **HUNT's** explanation to the FBI on November 9, 2021, disavowing knowledge of the drugs inside the car with T.C., evinces a consciousness of guilt. Based upon the facts and circumstances of **HUNT's** arrest on October 22, 2021, coupled with my conversations with other members of the FBI[2] familiar with **HUNT**, and my training and experience, and contrary to **HUNT's** explanation, it is my opinion that **HUNT**

---

[2] FBI agents are familiar with **HUNT** because she is a victim in another federal investigation.

was in the midst of acquiring drugs for her personal use when she was in the vehicle with T.C. and when **HUNT** and T.C. were arrested by the police. As a result, **HUNT** attempted to possess, and was in joint possession of, a quantity of the drugs seized on October 22, 2021.

## Arrest on October 26, 2022

13. On October 12, 2022, an officer with Town of Tonawanda Police Department ("TTPD") initiated a traffic stop on Kenmore Avenue after positively identifying the male driver and male front seat passenger as individuals that each had active warrants out of TTPD and other police departments. While interviewing the driver and passenger, the officer observed a white female with black hair sitting in the rear seat behind the front passenger. The officer attempted to place the front seat male passenger of the vehicle into custody, but the subject resisted, and a struggle ensued on the ground. The officer was ultimately able to overcome the resisting subject and placed him into custody. However, after placing the subject into custody, the officer noticed that the female passenger was no longer in the vehicle. A review of dash camera footage revealed that the female, later identified as **HUNT**, had fled the scene on foot. Patrols searched the area but were unsuccessful in locating her.

14. On October 26, 2022, at approximately 7:02 pm, a TTPD police officer observed C.M. operating a vehicle bearing New York registration KVA6104, south bound and Military Road, in the Town of Tonawanda. The officer initiated a traffic stop on the vehicle based on an expired vehicle inspection and the officer's knowledge of C.M. having a revoked non-driver identification only. **HUNT** was the passenger in the vehicle. The officer

recognized **HUNT** from the above-referenced TTPD incident that occurred on October 12, 2022.

15. During the October 26, 2022, incident, the officer determined that **HUNT** had active warrants out of Cheektowaga Town Court, and **HUNT** was placed under arrest without incident.

16. While **HUNT** was under arrest, officers located a piece of cellophane in **HUNT's** left coat pocket that contained four orange circular pills imprinted with ½. **HUNT** identified the pills as "Xanax. Well, Clonazepam." Officers were able to determine that the pills are .5mg of Clonazepam, a Schedule IV controlled substance.

17. **HUNT** told the officers that she does have a prescription for the pills but did not have the original bottle they were dispensed in with her. **HUNT** was charged with New York State Penal Law – 220.03 (Criminal Possession of a Controlled Substance 7th); and New York State Public Health Law – 3345. **HUNT** was issued an appearance ticket for the aforementioned charges before being turned over to Cheektowaga Police Department.

18. Additionally, according to a New York State Department of Health, Bureau of Narcotics Enforcement investigator, **HUNT** has never had a prescription for Clonazepam within the last five (5) years.

19.  Based upon my training and experience, and upon my conversations with other agents experienced in narcotics investigations, packaging pills, such as Clonazepam, in cellophane is consistent with how pills and other drugs are sold in illicit drug markets, and such packaging is inconsistent with how pills are validly sold by pharmacies to individuals with valid prescriptions. Accordingly, given the circumstances of the arrest, and upon my conversations with agents familiar with **HUNT**, I believe **HUNT** possessed the Clonazepam pills wrapped in cellophane unlawfully and for her own personal use, and that there is probable cause to believe she unlawfully possessed a Schedule IV controlled substance on October 26, 2022.

20.  Notably, FBI agents familiar with **HUNT** have tried to get her help in relation to her drug use and unstable housing, to no avail, and **HUNT's** local arrests have resulted in bench warrants. Based upon **HUNT's** behavior, including her proximity to drugs and possession of them, and agents' observations of **HUNT** while interacting with her, it appears she has developed a drug addiction and that she possesses and attempts to possess drugs to support her habit.

21.  As set forth herein, **HUNT** has been involved in pattern of drug seeking behavior resulting in her possession and attempted possession of Schedule II and Schedule IV controlled substances between on or about October 22, 2021, until and including on or about October 26, 2022.

## CONCLUSION

**WHEREFORE**, based upon the foregoing, I respectfully submit that there is probable cause to believe that **PHLYCIA HUNT** violated Title 21, United States Code, Sections 844(a) and 846.

_____
ANTHONY BUTERA
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed telephonically
this 21st day of March, 2023.

_____
HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge

8